512 So.2d 556 (1987)
Mateal ALLEN, Plaintiff-Appellee,
v.
LOUISIANA-PACIFIC CORPORATION, Defendant-Appellant.
No. 86-679.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1987.
On Rehearing August 12, 1987.
*557 Chris J. Roy, Alexandria, for plaintiff-appellee.
Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Peggy D. St. John, Alexandria, for defendant-appellant.
Before FORET, KNOLL and CULPEPPER,[*] JJ.
*558 KNOLL, Judge.
Defendant, Louisiana-Pacific Corporation, (Louisiana-Pacific) appeals a trial court ruling that plaintiff, Mateal Allen, was permanently and totally disabled under LSA-R.S. 23:1221(2) from a work-related accident. Plaintiff was awarded sixty-six and two-thirds percent of her wages, $113.34, per week from the time benefits were terminated on May 27, 1984, for as long as the disability persists. Defendant was further ordered to pay $3,428 medical expenses, $7,500 in attorney's fees, and all costs, including $250 each for two medical experts. Plaintiff's request for penalties was denied finding that the accident occurred after the effective date of the 1983 amendment to LSA-R.S. 23:1201.2 which deleted the penalties provision from the statute.
Louisiana-Pacific contends the trial court erred: 1) in finding plaintiff totally and permanently disabled; 2) in presuming a causal relationship between the accident and the injury; 3) in awarding medical expenses for non-treatment evaluation; and 4) in abusing its discretion in awarding attorney's fees. Plaintiff answered the appeal seeking additional attorney's fees in the amount of $5,000 for a frivolous appeal and penalties of twelve percent (12%) on all compensation due.

FACTS
The facts, as stated by the learned trial judge in his reasons for judgment, are as follow:
"On March 1, 1984, the plaintiff, Mateal Allen [who was 48 years of age at the time of the accident], was working as a cleanup person for the defendant, Louisiana Pacific Corporation. Her job consisted mainly of sweeping and picking up large boards that would fall from overhead chain hoists. As Mrs. Allen was preparing to leave work that afternoon, a large board (approximately 2" × 10" × 14' or 18') fell from one of the overhead hoists and struck her in the head and neck. Although she was wearing a hard hat, the impact of the board caused a laceration of her scalp for which she received four stiches at a walk-in-clinic.
Mrs. Allen returned to work the next day, Friday, March 2nd, but was unable to work Monday, Tuesday and Wednesday of the following week. After attempting to work March 8th thru 19th, she did not return. Mrs. Allen then saw a series of doctors and at least one chiropractor. The last doctor to examine her was Dr. Don Joffrion who had her submit to a series of radiological tests on October 22nd thru 24th of 1985...."

TOTAL AND PERMANENT DISABILITY
Louisiana-Pacific contends plaintiff failed to prove by clear and convincing evidence that the injury she sustained rendered her totally and permanently disabled. Defendant argues that the manifest error standard is inapplicable because the question is one of sufficiency and preponderance of the evidence rather than credibility of the witnesses.
In the past this court recognized that the manifest error test is inapplicable on appellate review where the question is one of sufficiency and preponderance of medical testimony in the form of depositions because the trial judge did not observe the demeanor of the witness and, therefore, is in no better position to assess credibility than the appellate court. Farris v. Ducote, 293 So.2d 589 (La.App. 3rd Cir. 1974); writ refused, 295 So.2d 814 (La. 1974); Wattigny v. Breaux, 488 So.2d 419 (La.App. 3rd Cir.1986). However, our Supreme Court in a recent decision, Larry Joe Virgil v. American Guaranty and Liability Insurance Company, et al., 507 So.2d 825 (La.1987) re-emphasized the manifest error standard and its purpose enunciated in Canter v. Koehring Co., 283 So.2d 716 (La.1973), and held: "The court of appeal erred in holding that the manifest error standard of appellate review does not apply when the evidence before the trier of fact consists solely of written reports, records and depositions. The court further erred in assessing credibility and weighing medical evidence as if the court of appeal were the *559 trier of fact." Therefore, we henceforth apply the manifest error standard to any evidence relied upon by the trier of fact. In the case sub judice, the record shows that both lay and expert medical testimony was introduced into evidence. The lay witnesses, including plaintiff, testified at trial. All medical testimony except Dr. Claude Stevens, a chiropractor who testified at trial, was received by the trial judge in the form of depositions.
LSA-R.S. 23:1221(2) provides compensation for permanent total disability in pertinent part as follows:
"(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds percent of wages during the period of such disability.
* * * * * *
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment."
The record shows that the trial judge received medical testimony from six different medical experts. Plaintiff was seen by Dr. Donovan Perdue, an orthopedic surgeon, on April 4, 16, and 26, 1984. Dr. Perdue diagnosed plaintiff's injury as a low back strain based on plaintiff's complaints of pain in the lower lumbar region and headaches going down her neck into her lower back and right thigh. X-rays revealed an old degenerative disc at the C5-6 level. Dr. Perdue did not perform a CAT Scan or a myelogram and thus could not indicate any objective findings of pain or physical disability. He opined that any disability plaintiff may have is based on psychosomatic causes not related to her injury. Dr. Perdue concluded that Mrs. Allen was capable of performing her regular job duties and that plaintiff's primary problem was emotional. Mrs. Allen did not keep her May 17, 1984, appointment with Dr. Perdue and discontinued medical treatment with him.
On June 27, 1984, Mrs. Allen saw Dr. Claude Stevens, a chiropractor. His examination revealed that Mrs. Allen had spinal meningeal irritation in both the cervical and lumbar regions. Spasms of the paraspinal muscles indicated the pain was generated from irritation of the nerve facettes of the lumbar spine. He also found a possible bulging disc at the L4-5 level. His treatment consisted of a cervical collar and lumbar support to help reduce the cervical spasms and to relieve pressure on the nerve roots. Mrs. Allen was placed in intersegmental traction and given anti-inflammatory medication, in addition to ultrasound treatments and spinal manipulations. After his treatment did not achieve the desired results, Dr. Stevens referred plaintiff to Dr. Arsham Naalbandian, a neuro-psychiatrist. Dr. Stevens' prognosis was "guarded".
Dr. Naalbandian recommended a CAT Scan of the brain and spine because he found no objective findings in his office examination on December 4,1984. He suspected a physical disability because of Mrs. Allen's subjective complaints.
On December 11, 1984, Mrs. Allen saw Dr. Davidson Texada, Jr. a neuro-psychiatrist. Dr. Texada opined that the accident not only injured Mrs. Allen organically, but may have triggered a change in her that has made her disabled on a neuropsychiatric *560 basis. Dr. Texada examined plaintiff on at least ten occasions and his prognosis for her return to work was poor, even with surgery. His treatment was discontinued after Mrs. Allen indicated she was against back or neck surgery. He opined that the accident tended to magnify the pre-existing degenerative disc disease or any neurosis Mrs. Allen may experience from being frustrated with such a heavy family responsibility.
Plaintiff next saw Dr. Paul D. Ware of the Louisiana State University School of Medicine at Shreveport at the request of the defendant. On September 9, 1985, Dr. Ware diagnosed a possible aggravation of a pre-existing cervical and lumbar arthritis. He did not find any nerve root compression or bulging disc. He did not think that plaintiff was disabled, but rather, he considered Mrs. Allen a malingerer with an emotional overlaywhere the patients describe symptoms greater than they can explain on a physical basis. Dr. Ware found no positive physical or neurological findings to suggest that plaintiff was disabled as a result of the accident.
On May 24, 1984, she was examined by Dr. Don K. Joffrion, an orthopedic surgeon, at the request of her attorney. Dr. Joffrion was concerned about Mrs. Allen's complaints of persistent pain and numbness along the radial side of her right forearm. An x-ray showed spondylosis at several levels. At this examination he diagnosed Mrs. Allen as having a head injury and a low back strain. He next saw Mrs. Allen on October 22, 1985, for further test ing. Mrs. Allen was hospitalized at Willis Knighton Hospital wherein a cervical myelogram was performed by a staff radiologist, Dr. Kaufman. The myelogram confirmed degenerative disc disease at all levels in addition to cervical spondylosis at C4-5, C5-6, and C6-7. Dr. Kaufman's report indicated that the nerves were being pinched on both sides of the spine at the fifth and sixth disc. These findings were consistent with plaintiff's complaints of pain in the right arm. Dr. Joffrion opined that plaintiff would probably benefit from an anterior cervical spine fusion and discectomyremoval of the discs at the three levels involvedand concluded that without surgery Mrs. Allen was not able to perform her normal job duties. He recommended that surgery be performed since the problem would not alleviate itself.
Lay testimony concerning plaintiff's disability consisted primarily of Mrs. Allen, her daughter Loretta Watkins, and her husband, Herman Allen. All testified that Mrs. Allen had been a hardworking lady prior to the accident and the main provider for the family. After the accident, Mrs. Allen constantly complained of pain in her head, neck, lumbar region and legs. Mrs. Allen has no special training for employment opportunities and is experiencing emotional adjustment because of her inability to work.
After carefully reviewing the record, we do not find that the trial judge committed manifest error in his factual determination that Mrs. Allen proved by clear and convincing evidence that she is totally and permanently disabled. The medical evidence as a whole substantiates this finding, especially the testimony of plaintiff's treating physician, Dr. Don Joffrion, Dr. Claude Stevens, a chiropractor, and Dr. Davidson Texada, a neuro-psychiatrist, who continues to treat Mrs. Allen. Dr. Perdue did not make a complete diagnosis because Mrs. Allen, in his opinion, exaggerated her complaints of pain and was nervous and appeared anxious. We do not find the trial court in error in its assessment of either lay or medical testimony since it is within the province of the trial court to determine the weight accorded medical and lay testimony in a worker's compensation case. Venable v. Rawlings, Inc., 471 So.2d 1132 (La.App. 3rd Cir.1985), writ denied, 476 So.2d 340 (La.1985).

CAUSAL RELATIONSHIP
Louisiana-Pacific contends the trial court erroneously presumed a causal relationship between the accident and plaintiff's disability. The recent case of Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985), clarifies the jurisprudence regarding the burden of establishing *561 disability and its causal relationship with the employment accident. The court stated:
"In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. (citations omitted) A claimant's disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, (citations omitted) or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection."
Pre-existing disease or infirmity of the employee does not disqualify a claim if the work-related injury aggravated, accelerated or combined with the disease to produce disability for which compensation is claimed. Lucas v. Insurance Company of North America, 342 So.2d 591 (La.1977); Johnson v. Travelers Insurance Co., 284 So.2d 888 (La.1973). Once the disabled employee establishes the presumption of a causal relationship, the party denying the existence of the presumed fact assumes the burden of producing evidence and the burden of persuasion on the issue. Walton, supra.
In the present case there is no question that Mrs. Allen suffered an injury when a 2" × 10" × 14' or 18' board fell on her head and rolled down her back while in the course and scope of her employment with Louisiana-Pacific. The record shows that prior to the accident plaintiff had not suffered any of the back, neck and leg ailments she described to various medical personnel. Plaintiff worked all of her life, sometimes working two jobs, in an effort to support her family. She was employed at Louisiana-Pacific 10 years before the accident occurred and was working part-time as domestic help.
Dr. Donovan Perdue testified that an injury such as this to the head can probably cause injury to the cervical area, and that pain in plaintiff's right leg could be caused by nerve root irritation. Dr. Davidson Texada, Jr., testified that the accident not only injured Mrs. Allen physically, but may have triggered an emotional change in her that has now rendered her disabled even on a neuro-psychiatric basis.
In addition, Dr. Don Joffrion testified that plaintiff's pre-existing degenerative disc disease was aggravated as a result of the injury.
Louisiana-Pacific presented no evidence to rebut the existence of the presumed causal relationship between the accident and plaintiff's disability. Plaintiff was in good health but commencing with the accident the symptoms of the disabling condition, aggravation of plaintiff's degenerative disc disease, appeared and continuously manifest themselves afterwards, and there is sufficient medical evidence to show a reasonable possibility of causal connection between the accident and plaintiff's disabling condition.
The 1983 amendments to the worker's compensation statutes omitted any presumption of disability, but it did not omit a presumption of causal relationship.
Malone & Johnson, 13 Louisiana Civil Law Treatise, Worker's Compensation (2d ed.) Sec. 288 comment on this as follows:
"What may have been meant by `unaided by any presumption of disability' is uncertain. Some have thought that this was aimed at the presumption found in numerous cases that a claimant's disability is presumed to have resulted from an accident if prior to the accident the claimant was in good health but after it the symptoms of disability appear, so long as the medical evidence supports a causal link between the accident and the disability. But this is not a `presumption of disability.' Rather, it is a presumption of causal relationship between an accident and disability, once the disability is established by other means. Thus the new *562 phrase in the statute cannot properly be interpreted as affecting this presumption of causation." (Footnotes omitted.)
Then again in Sec. 252 they comment further:
"There was immediately discussion of whether the amendment was aimed at the presumption discussed in the Main Volume, or rather at something like the odd lot doctrine. Properly understood, the amendment could not be aimed at the presumption discussed in the Main Volume for the simple reason that it is not a presumption of disability. Rather it is a presumption of causal connection between a proven accident and a proven disabling condition. It applies only when the claimant has shown that an accident occurred and that he was disabled, but needs to establish a causal link between the two. Thus the presumption does not seem to be affected by the amendments to Section 1221."
Our finding is in accord with those of Malone & Johnson cited above. Finding a presumption of a causal relationship between the accident and disability is not offensive to or violative of the presumption omitted in Section 1221. The amendments to Sec. 1221 very clearly state: "the employee proves by clear and convincing evidence, unaided by any presumption of disability," and does not concern a presumption of causal relationship. Therefore, we find the trial judge did not err in presuming a causal relationship between the accident and plaintiff's injury.

MEDICAL EXPENSES
By this assignment defendant contends the trial court erred in awarding plaintiff $3,328 for chiropractic treatment by Dr. Claude Stevens from June 24, 1984, through November 19, 1984, and in awarding plaintiff $100 for a May 24,1984, evaluation by Dr. Don Joffrion.
LSA-R.S. 23:1203(A) provides:
"A. In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical, and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such services and treatment shall be performed at facilities within the state when available."
Medical expenses for treatment by a health care provider are recoverable when such treatment is necessary, although it need not be effective. Sanchez v. Viccinelli Sheet Metal & Roofing Co., Inc., 473 So.2d 335 (La.App. 1st Cir.1985), writ denied, 477 So.2d 1124 (La.1985). This rule applies even where the health care provider is secured by the claimant on his/her own initiative. However, employers and their insurers are not liable for medical expenses incurred in preparation for litigation.
The trial court found these medical expenses necessary for the diagnosis and treatment of Mrs. Allen. The record shows that Dr. Claude Stevens examined Mrs. Allen at her request. After hearing a history of Mrs. Allen's complaints and performing several tests, Dr. Stevens' treatment consisted of a cervical and lumbar support to reduce cervical spasms and pressure on the nerve roots. Dr. Stevens prescribed medication and traction, and treated Mrs. Allen with massages, ultrasound and spinal manipulations for a possible bulging disc at L4,5. Dr. Stevens' treatment did not achieve the desired results, however, it was nonetheless necessary toward resolution of Mrs. Allen's symptoms and complaints and therefore recoverable. Sanchez, supra. Plaintiff is likewise entitled to recover $100 for Dr. Don K. Joffrion's May 24, 1984, examination. The record shows that on May 24, 1984, Dr. Joffrion examined Mrs. Allen's back, neck, and extremities after Mrs. Allen complained of pain in her lower back with radiation into the right hip and right foot. This initial examination led to a subsequent examination and hospitalization wherein a cervical myelogram was performed which detailed the exact nature of her disability. Dr. Joffrion ultimately recommended that Mrs. Allen undergo anterior cervical spine fusion at three levels to relieve nerve root *563 impingement due to an aggravated degenerative disc disease. We find the May 24, 1984, treatment by Dr. Joffrion to have been necessary to properly diagnose plaintiff's condition.

ATTORNEY'S FEES AND PENALTIES
Louisiana-Pacific contends the trial court abused its discretion in awarding plaintiff $7500 in attorney's fees. In answer to the appeal plaintiff requests an additional $5000 in attorney's fees for a frivolous appeal, plus twelve percent (12%) penalties for defendant's failure to reinstate compensation benefits due from May 27, 1984, the date compensation benefits were discontinued, and suggests that any penalties awarded be in addition to legal interest. The trial court ruled the penalty provision of LSA-R.S. 23:1201.2 was deleted by the 1983 amendments to the worker's compensation statutes. However, plaintiff contends on appeal that penalties are due under LSA-R.S. 23:1201 (B and E), which provides as follows:
"B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, on which date all such compensation then due shall be paid.
* * * * * *
E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), ... of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay. No worker's compensation insurance policy shall provide that this sum shall be paid by the insurer if the director or the court determines that the twelve percent additional payment is to be made by the employer rather than the insurer. Any additional installment of compensation paid by the employer or insurer pursuant to this Section shall be paid directly to the employee."
The statute applies to an employer's failure to pay the first installment of compensation payable for permanent total disability. It does not pertain to discontinuance of benefits. When benefits have been discontinued and the employer or insurer are found to be arbitrary, capricious or without probable cause in discontinuing benefits 60 days after receipt of written notice, this shall subject the employer or insurer to reasonable attorney's fees only. The 1983 amendment deleted penalties for discontinued benefits. See LSA-R.S. 23:1201.2.
The record shows that both parties stipulated that plaintiff was paid $1,052.44 in compensation benefits in addition to medical benefits in the amount of $3,433.03. Plaintiff does not allege Louisiana-Pacific's failure to pay the first installment within the 14 day allowable time period. Therefore, the provisions of R.S. 23:1201(B), (E) are inapplicable and statutory penalties will not be assessed.
In regard to attorney's fees, when an employer fails or refuses to reinstate compensation benefits in light of objective evidence of disability and the refusal is shown to be arbitrary, capricious and without probable cause, it subjects the employer to damages for attorney's fees as discussed above. The basis for this rule is that an employer has an on-going duty to review medical reports concerning an injured employee's disability, and may not deny or discontinue compensation based on inconclusive medical reports. Alexander v. Department of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3rd Cir. 1982); Williams v. Western Preferred Casualty Insurance Company, 465 So.2d 191 (La.App. 3rd Cir.1985).
*564 In the case sub judice, Louisiana-Pacific's personnel manager, John Ivy, testified that compensation benefits were not reinstated after May 27,1984, because of medical reports received by Dr. Paul Ware, who only saw plaintiff on one occasion, and Dr. Donovan Perdue, who indicated that anterior cervical fusion was not necessary but may prove helpful. Neither doctor performed any objective tests on Mrs. Allen, although both doctors concluded that plaintiff was able to return to work.
Ivy was also privy to medical reports from Dr. Don Joffrion and Dr. Davidson Texada, Jr. Although Ivy authorized payment of the hospital bill for Dr. Joffrion's treatment at Willis Knighton Hospital in Shreveport, he failed to even read Dr. Joffrion's diagnosis and prognosis. However, he did read Dr. Texada's deposition which indicated that Mrs. Allen's ability to return to work was poor. On advice of counsel, Ivy decided not to reinstate compensation benefits based primarily on the inconclusive medical reports of Drs. Ware and Perdue. Given the fact that defendant had an on-going duty to review medical reports concerning plaintiff's disability, defendant was not at liberty to deny or discontinue compensation benefits based solely on inconclusive medical reports.
Defendant gave no consideration at all to a subsequent report of plaintiff's treating physician, Dr. Joffrion, which indicated that without surgery Mrs. Allen was not able to perform her normal job duties. Dr. Joffrion opined that plaintiff's injury could cause a pre-existing degenerative disc to flare up, and that a cervical spine fusion and discectomy would benefit Mrs. Allen. Furthermore, the arbitrary and capricious standard used under the prior statute in regard to penalties still applies with regard to attorney's fees. In light of the medical information known to defendant, we find defendant's actions in failing to reinstate compensation benefits to be arbitrary, capricious and without probable cause. In addition to the $7500 attorney's fees awarded by the trial court, plaintiff seeks damages for a frivolous appeal. Although we deny such damages we do find that a $500 increase in attorney's fees for defense of this appeal is appropriate.
For the foregoing reasons, the judgment of the trial court is amended to reflect a $500 increase in attorney's fees. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are assessed to Louisiana-Pacific.
AFFIRMED AS AMENDED.
ON REHEARING
PER CURIAM
We granted rehearing for the limited purpose to correct an error of law in the opinion concerning the issue of penalties. As mentioned in the opinion, the trial court ruled the penalty provision of LSA-R.S. 23:1201.2 was deleted by the 1983 amendments to the worker's compensation statutes and originally we affirmed. We now declare that the 1983 amendments to the worker's compensation statutes did not delete penalties for discontinued benefits. A reasonable reading of R.S. 23:1201(A), (B), (C) and particularly (E) allows the penalty for discontinuance of benefits. Paragraph (E) provides: "If any installment of compensation payable without an order is not paid within the time period provided in Subsection (B), (C) or (D) of this Section, there shall be added to such unpaid installment a penalty...." (Emphasis added.) From this reading it is clear that a penalty is allowed for discontinuance of benefits and not just for the first installment.
The defendants were found to be arbitrary, capricious and without probable cause in failing to reinstate compensation benefits and cast with reasonable attorney's fees. Defendants are now cast with penalties of 12% on each unpaid installment since May 27, 1984, plus legal interest thereon. In all other respects, our opinion remains the same.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.