591 So.2d 1299 (1991)
Steven Todd CASTILLE, Plaintiff-Appellant,
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, et al., Defendant-Appellee.
No. 90-697.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
*1300 Donald Mayeux, Eunice, for plaintiff-appellant.
Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Wm. H. Parker, III, Lafayette, for defendant-appellee.
Before LABORDE, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
Plaintiff, Steven Todd Castille, appeals the trial court judgment dismissing his claim for injuries allegedly resulting from a slip and fall at a grocery store owned by the Great Atlantic and Pacific Tea Company (A & P).

FACTS
On Sunday, September 21, 1986, after Sunday mass, Castille, his mother, Gail Babineaux, and his sister, Jennifer Reed, entered the A & P grocery store in Opelousas to do their weekly shopping. As in the past, Castille pushed the shopping cart through the store as his mother and sister walked in front removing items from the shelves and placing the items in the shopping cart. At approximately 5:15 p.m., the three walked down an aisle toward the front of the store with Castille's mother and sister walking on the left side of the aisle and Castille pushing the shopping cart on the right side. As he walked down the aisle, Castille remembers slipping, reaching for the shelf to prevent his fall and falling backwards. His mother heard the noise of falling groceries and looked back to see Castille lying on the floor on his back unconscious. She ran over to Castille and noticed loose grits on the adjacent shelves, on the floor and underneath Castille's legs *1301 and feet. Warren Fontenot, the assistant manager who had walked that same aisle 10-15 minutes earlier, also noticed the loose grits on the bottom shelf and on the floor as he tended to Castille. However, Fontenot saw no open bags of grits to account for the loose grits and saw no loose grits on Castille's clothing. Castille was transported by ambulance to a local hospital where he remained for four days. Castille complained of jaw pain and of episodes of headaches, dizziness, nausea and vomiting.
At the trial on the merits on July 25, 1989, two physicians, a clinical psychologist, and a dentist testified via deposition. Dr. Thomas R. Butaud, an orthopaedic surgeon, examined Castille on the day of the accident. Dr. Butaud detected no neck or muscle spasm, no upper extremity atrophy and no objective findings to support Castille's complaints of neck and lower back pain. Dr. Butaud's review of the x-rays revealed only Castille's pre-existing condition of mild scoliosis (curvature of the spine) that he discovered in a routine medical examination approximately seven months earlier and a congenital condition of spina bifida occulta (an opening in the spinal column but no protrusion of the spinal cord). Because of Castille's complaints of pain, Dr. Butaud prescribed pain medication and a physical therapy evaluation.
Dr. James Domingue, a neurologist, examined Castille three days after the accident. Other than absent reflexes and Castille's unusual gait, Dr. Domingue found no evidence of physical injury. Castille's head had no signs of recent trauma and no neck or back spasm was present. Because of the normal readings on a brain scan and an EEG (electroencephalogram), Dr. Domingue opined that a fugue (a temporary flight from reality) probably caused his fall and his blackouts and nausea attacks were caused by hyperventilation. Dr. Domingue prescribed an anti-anxiety medication.
Dr. Glenn Ally, a clinical psychologist, examined Castille at the request of Dr. Domingue. Dr. Ally interviewed Castille and administered a MMPI (Minnesota Multiphasic Personality Inventory). Dr. Ally opined that Castille was not a malingerer but Castille did tend to magnify and exaggerate his symptoms. He attributed Castille's blackout spells to hyperventilation brought on by anxiety attacks and successfully treated Castille's hyperventilation with relaxation exercises and by advising him to breathe into a paper bag during an anxiety attack.
Dr. H. Olin Desonier, a dentist who limits his practice to the treatment of TMJ dysfunction, examined Castille and concluded that he had a TMJ problem. Dr. Desonier successfully treated Castille's TMJ dysfunction with splint therapy.
The record contains two stipulations. First, if every employee of A & P were called to testify, each would deny placing the foreign substance on the floor. Second, if Castille's sister were called to testify, her testimony would be the same as her mother's testimony regarding the interior of the store, the circumstances of the fall and the condition and complaints of Castille.
In his written reasons for judgment, the learned trial judge stated:
"I have considered the evidence, the briefs and the arguments of counsel in the above-styled proceeding. I find that the plaintiff has failed in his burden of proving that the injuries of which he complains were caused through the negligence of the defendant, in failing to keep its aisle clear, and thus causing him to slip and fall. On the contrary, the evidence shows that, more probably than not, the fall did not cause either an emotional or a traumatic fugue from which the plaintiff later suffered or any other condition for which he was treated; but in fact, the evidence shows that the plaintiff's fall was caused by a spontaneous fugue, and also that this fall was totally unrelated to the condition of the floor in the A & P aisle through which he was walking.
Accordingly, the plaintiff's suit will be dismissed, with prejudice at his costs."

*1302 LIABILITY OF STORE OWNER
LSA-R.S. 9:2800.6 as it appeared at the time of trial, provided:
"A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a suit for damages by a person who has suffered damages as the result of a hazardous condition while on the merchant's premises, the person must prove that the accident was caused by a hazardous condition. The burden of proof then shifts to the merchant to prove that he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions.
C. In exculpating himself from liability under this Subsection, the merchant need not introduce the testimony of every employee of the merchant or any particular proportion thereof, but is only required to introduce the testimony of any employee shown to have actually created the hazardous condition and those employees and management personnel whose job responsibilities included inspection or cleanup of the area where the accident giving rise to the damages occurred.
D. `Merchant means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.'"
Under this statute and our jurisprudence, to establish a prima facie case, a plaintiff must prove: 1) that a foreign substance created a hazard on the floor; 2) that he stepped in or onto the foreign substance; and, 3) that the foreign substance caused him to slip and suffer injury. Estes v. Kroger Co., 556 So.2d 240 (La.App. 2nd Cir.1990), writ denied, 559 So.2d 1360 (La. 1990). Plaintiff must initially establish causation between the presence of the foreign substance and his slip and fall and resultant injuries. Only then does the presumption of negligence arise and shift the burden to the store owner to exculpate himself from the presumption that he was negligent. Doming v. K-Mart Corp., 540 So.2d 400 (La.App. 1st Cir.1989).
A store owner exculpates himself by establishing that he exercised such a degree of care that he would have known under most circumstances of the harmful situation. Reasonable protective measures including periodic inspections must be taken to keep the aisles and floors free from substances or objects that may cause customers to fall. Gonzales v. Winn-Dixie, Inc., 326 So.2d 486 (La.1976).
Whether a store's protective measures have been reasonable is largely dependent on the circumstances of each case, taking into consideration the type and volume of merchandise, the volume of business, and the floor space used for customer service. Arnold v. T.G. & Y Stores Co., 466 So.2d 529, 532 (La.App. 3rd Cir.1985), writ denied, 470 So.2d 126 (La.1985).
The store owner is not the insurer of the customers and he does not have to maintain the entrance ways, aisles and passageways in perfect condition. Stockwell v. Great Atlantic & Pacific, 583 So.2d 1186, 1189 (La.App. 1st Cir.1991).
The manifest error rule applies to factual findings of the trial court based on both live testimony and depositions. Virgil v. American Guar. & Liability Ins., 507 So.2d 825 (La.1987); West v. Wal-Mart Stores, Inc., 539 So.2d 1258 (La.App. 3rd Cir.1989), writ denied, 543 So.2d 19 (La. 1989); Allen v. Louisiana-Pacific Corp., 512 So.2d 556 (La.App. 3rd Cir.1987).
In the case sub judice, it is clear that the trial court found no causation between the presence of grits on the floor and Castille's fall. The trial court specifically *1303 concluded that Castille's "... fall was caused by a spontaneous fugue, and also that this fall was totally unrelated to the condition of the floor in the A & P aisle through which he was walking." The trial judge based his conclusion on uncontradicted medical evidence.
We have carefully examined the medical evidence, all of which consists of Castille's treating physicians, and find that it clearly preponderates against Castille's position that grits on the floor caused him to fall. We were especially impressed with this evidence since it was his own treating physicians' opinions.
Castille remembers falling and knocking groceries off the store shelves as he reached to prevent his fall. However, Castille could not remember whether he also scattered loose grits off the shelves onto the floor while he was falling. Castille's mother and sister heard the sound of falling groceries and saw Castille on the floor with loose grits underneath his legs and feet and loose groceries nearby on the floor. Given the testimony of Castille, his mother, and sister, it is just as probable that Castille's fall resulted from a spontaneous fugue rather than from a slip due to loose grits already on the floor.
Moreover, both treating physicians, Dr. Domingue and Dr. Ally, attributed Castille's fall to a psychologically induced spontaneous fugue. Dr. Domingue found no objective evidence of a head injury and opined that Castille's fall was a manifestation of an emotional disorder. Dr. Ally viewed Castille as a stressful person who exaggerates or magnifies his symptoms and successfully treated his symptoms with relaxation exercises and a paper bag. Viewing the entire record, we cannot say that the trial court abused its discretion in finding that Castille failed to prove that his fall and resultant injuries were caused by a hazardous condition on the merchant's premises. The presence of a foreign substance on a floor alone is not sufficient grounds to impose liability upon a store owner.
Assuming arguendo that Castille did establish by a preponderance of the evidence that the loose grits on the floor caused his slip and fall, we find that the record amply demonstrates that A & P acted in a reasonably prudent manner in attempting to keep the store premises free of hazardous conditions. The assistant manager, Warren Fontenot, gave uncontradicted testimony that the store floor is mopped four times daily and, on that particular day, the floor had been swept at approximately 1:30 p.m. He also testified that he "religiously" walks each aisle several times an hour and had walked that particular aisle 10-15 minutes before the accident and saw no loose grits. In addition, both parties stipulated that if called to testify, every A & P employee would deny spilling the loose grits on the floor. Under these circumstances, we find A & P acted in a reasonably prudent manner in exercising the duty of care it owed to its patrons to keep the premises free of any hazardous conditions. Although store owners owe a duty to patrons to keep their store in a reasonably safe condition and must exercise reasonable care to keep the aisles, passageways and floors free from hazardous conditions, they are not under a duty to discover and remedy hazardous conditions instantly created.
For the foregoing reasons, the judgment of the trial court denying plaintiff's claim is affirmed. Costs of this appeal are assessed to plaintiff, Steven Todd Castille.
AFFIRMED.