628 So.2d 1309 (1993)
Janet SAUCIER, Plaintiff-Appellee,
v.
KUGLER, INC. d/b/a Marksville Super Value, et al., Defendants-Appellants.
No. 92-1222.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1993.
William Joseph Bennett, Marksville, for Janet Saucier.
Jackson Burke Bolinger, Lafayette, for Kugler, Inc. d/b/a Marksville Super Value, et al.
Before DOMENGEAUX, C.J., and STOKER and THIBODEAUX, JJ.
THIBODEAUX, Judge.
Defendants-Appellants, Kugler, Inc. d/b/a Marksville Super Value, a grocery store, and Insurance Company of North America, its insurer, appeal suspensively the judgment of the trial court rendered in favor of Ms. Janet Saucier. The trial judge held that Super *1310 Value was liable for Ms. Saucier's injuries sustained as a result of a slip and fall accident which occurred on its premises. For the following reasons, we affirm.

FACTS
On August 5, 1991, Ms. Saucier was a customer at Super Value. While pushing a shopping cart in the aisle of the produce section, between 5:30 and 6:00 p.m., Ms. Saucier stepped on a lemon, which was on the floor in that aisle. When she stepped on the lemon, she lost her balance and fell. Ms. Saucier sustained injuries as a result of the fall.
Before trial, a stipulation as to the amount of damages to which Ms. Saucier would be entitled if Super Value was found to be liable was entered. Consequently, the trial of this matter was held solely on the issue of Super Value's liability.
Ms. Saucier, a frequent shopper at Super Value for several years, testified that on August 5, 1991, she and her friend, Ms. McKay, went shopping together at Super Value after picking Ms. McKay's husband up from work. Upon entering the store, she proceeded down the section of the produce aisle close to the shelves which contained the produce on the right side of the displays. Because there were people on the right side of the aisle with buggies, she left and later returned to the produce aisle and parked her shopping cart on the opposite side of the aisle close to the glass container shelving. The accident occurred on the left side of the displays in the produce aisle.
When questioned about the accident, Ms. Saucier stated that she stepped on something round which caused the buggy to roll and she went with the buggy which caused her to slip forward onto her knees. Ms. McKay testified that shortly thereafter, she returned to the produce section to see if Ms. Saucier was finished with her shopping when she saw Ms. Saucier on the floor. Ms. Saucier testified that the first time she went down the aisle, she did not see anything on the floor, but she had not gone down the part of the aisle on the left side of the displays, where the accident occurred. She further stated that she did not see the lemon prior to her fall and did not know how the lemon got on the floor.
Ms. McKay testified that upon inquiring as to whether Ms. Saucier was alright and not getting a response, she went to the booth at the front of the store to inform Shirley Archer, the head cashier, that Ms. Saucier had fallen. Samuel Catois, the store's assistant manager, testified that he became aware of the accident when Ms. McKay approached him and requested a cup of water for Ms. Saucier. He further stated that he did not know in which aisle Ms. Saucier had fallen and began looking down several aisles where he eventually found her in the produce section on the left side of the produce aisle. Mr. Catois added that on that particular day, there was more than the usual number of displays in that aisle. When he arrived, he also noticed that Ms. Saucier was shaking. Ms. Archer went back to the produce aisle with Ms. McKay and arrived at the same time that Mr. Catois arrived. When Ms. McKay and Ms. Archer reached Ms. Saucier, Ms. Archer picked up a lemon that had been smashed. Ms. McKay testified that she did not know how the lemon got on the floor and that she did not see a lemon on the floor when she first went in the store 15-20 minutes prior to the accident. The testimony of Ms. Saucier and the Super Value employees, Ms. Archer and Mr. Catois, as well as the photographs of the produce aisle, reveal that the lemons were stacked on a shelf one on top of the other at an angle toward the floor of the produce aisle. When questioned about the propensity for produce to fall, Catois replied that they often fall to the floor.
Catois testified that it is part of every Super Value employee's duty to inspect the floors and that records of the inspections are kept in a notebook and recorded by hand written notations indicating the time that the employee leaves to inspect the store and the time of the employee's return. Upon returning to the front office, the employee would indicate whether the aisle was "clear" *1311 or "clean" and initial the entry. He further stated that it is specifically the head cashier's job or the office person's job to inspect the store and make notations on the store's condition once every hour. Further testimony by Mr. Catois revealed that if the aisles are clear, the head cashier is to write "clear;" if the aisle floors need cleaning, she is to call another employee to mop or pick up spilled grocery items. He testified that it is routine for employees to walk through and look for items that have fallen or that have spilled. Upon cross-examination, Mr. Catois testified that there was no notation on August 5, 1991, in the inspection notebook, indicating that an accident occurred or that the floor was not clean. However, Mr. Catois continued, the absence in the notebook was due to the fact that a separate accident report was written although the normal procedure was to write any accidents in the inspection notebook.
When questioned as to the varying times which it took Ms. Archer to inspect the 10,000 square foot store ranging from 10 minutes to 35 minutes, Mr. Catois testified that the discrepancy exists because sometimes when the store is inspected, the employee inspecting the store can stand at the end of each aisle and tell if something is on the floor rather than walking up and down each aisle. Ms. Archer testified that the varying times were attributed to the fact that she notes the time that she leaves the office to inspect and the time she returns, which does not necessarily mean that she spent the entire time away from the office inspecting the store. She also testified that inspections take longer when the store is busy between the hours of 10:00 a.m. and 2:00 p.m., and between 4:00 and 5:30 p.m. An examination of the inspection notebook reveals that on August 5, 1991, during the 5:10 to 5:20 p.m. inspection, there was a notation that the store was clean. That same notation was present in the 6:00 to 6:10 p.m. inspection. According to Mr. Catois' testimony, the accident occurred before 6:00 p.m. because he prepared the accident report at 6:15 p.m. which was after Ms. Saucier left the store. Mr. Catois' testimony is contrary to Ms. Archer's testimony as to the time that the accident occurred. Ms. Archer claims that the accident occurred after 6:00 p.m.
The testimony of Mr. Catois and Ms. Archer reveals that Super Value had no store policy as to how the store inspection was to be conducted. Surprisingly, the testimony by the employees of Super Value as to its inspection procedures, was contradictory.

ISSUES
Super Value raises three issues: 1) whether La.R.S. 9:2800.6, as amended by Acts 1990, No. 1025, § 1, effective September 1, 1990, is applicable to this cause of action which arose August 5, 1991; 2) whether Ms. Saucier presented a prima facie case pursuant to the requirements of La.R.S. 9:2800.6, as to whether Super Value either created or had actual or constructive notice of the condition which caused her damages, prior to the occurrence of her fall; and, 3) whether Ms. Saucier established that Super Value failed to make a reasonable effort to keep its premises free of hazardous conditions.

LIABILITY OF SUPER VALUE
Trial judge's written reasons for judgment stated in part that:
"The defendant failed to establish that it had a reliable system of inspection in place on the date in question. The method of inspection was left solely to the discretion of the employees. The log book that was maintained did not account for any deficiencies found. The assistant manager stated there was no hard policy in place as to whether the employee making the inspection had to walk each aisle. He also stated that produce was often found in the aisle and returned to the shelf."
There is no question that La.R.S. 9:2800.6, amended by Acts 1990, No. 1025, § 1, effective September 1, 1990, applies to this case where Ms. Saucier's fall in the Super Value store occurred on August 5, 1991. It provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable *1312 care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
Super Value assigns as error the trial judge's failure to apply La.R.S. 9:2800.6, as amended in 1990, claiming this resulted in an inappropriate placement of the burden of proof on Super Value to establish that it had a reasonable system of inspection in place prior to the fall. Super Value submits that the trial judge's failure to appropriately apply the statute was reversible error. We disagree.
The plain language of the 1990 amendment makes it applicable to this case. Admittedly, the trial judge was wrong to express his findings of fact in terms of what Super Value failed to establish at trial. After the 1990 amendment, floor debris does not create a presumption of store negligence. Therefore, the amendment changes the law to the extent that the burden of proof does not shift to the merchant to exculpate itself from the presumption of negligence once the plaintiff proves that he or she suffered damages due to an accident which was caused by a hazardous condition on the merchant's premises. Perez v. Wal-Mart Stores, Inc., 608 So.2d 1006 (La.1992). However, a patron in a self-service store reasonably assumes that the aisles are clear for passage and focuses on the displayed merchandise, not the pathway. Perez, supra.
La.R.S. 9:2800.6 requires the plaintiff to prove that the hazardous condition which caused the fall presented an unreasonable risk of harm, that the merchant either created or had actual or constructive notice of the condition which caused damage prior to the occurrence, and the merchant failed to exercise reasonable care.
The merchant's duty of care requires that reasonable protective measures, including periodic inspections, must be undertaken to ensure that the premises are kept free from substances that might cause a customer to fall. Castille v. Great Atlantic & Pacific Tea Co., 591 So.2d 1299 (La.App. 3d Cir.1991); Johnson v. Wal-Mart Stores, Inc., 616 So.2d 817 (La.App. 2d Cir.1993). Whether the protective measures were reasonable must be determined in light of the circumstances of each case, along with the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store, and other such considerations. Castille, supra; Johnson, supra.
In this case, it is undisputed that Ms. Saucier slipped on a lemon. In the context of slip and fall cases, a hazard is shown to exist when the fall results from a *1313 foreign substance on the floor. Stockwell v. The Great Atlantic & Pacific Tea Co., 583 So.2d 1186 (La.App. 1st Cir.1991). Clearly, a lemon on the floor of Super Value is a foreign substance and, thus, a hazardous condition. Likewise, a lemon, which can roll from one place to another in an aisle divided by many displays, presents an unreasonable risk of harm.
Super Value contends that because the trial judge couched his factual findings in terms of what it failed to establish, Ms. Saucier did not meet her burden of proof establishing liability on the part of Super Value.
A court of appeal may not set aside the trial judge's factual findings in the absence of manifest error or unless the trier of fact is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The manifest error rule applies to factual findings of the trial court based on both live testimony and documents admitted into evidence. See, Virgil v. American Guar. & Liability Ins., 507 So.2d 825 (La.1987). Although the trial judge states his factual findings in terms of what Super Value failed to establish, he nevertheless made specific factual findings based upon the testimony and evidence presented by both parties in the case, and we have considered whether his terminology affected the outcome. It is clear that the trial judge found there was a condition in the produce aisle of Super Value on August 5, 1991 which presented an unreasonable risk of harm to Ms. Saucier. Furthermore, Super Value either created the condition or had notice of the condition and failed to exercise reasonable care.
After a thorough review and evaluation of the record, we are convinced that the facts found by the trial judge are not manifestly erroneous. The trial judge made a specific finding of fact that, from her demeanor on the stand, the testimony of Ms. Archer as to inspection of the store's aisles, was tainted by concern over her employment rather than memory of the events of that day. Further, the trial judge found that the particular aisle in question had not been inspected at the time of the accident. The inspection notebook of Super Value did not utilize a uniform coding system that would inform other employees of the condition of the store's aisles. Both Super Value employees who testified at trial of this case gave various symbols and abbreviations used in the inspection notebook to indicate whether the aisle was "clear" or "clean." Also, testimony revealed that depending on which employee did the inspection, what is meant by the words "clean" and "clear" in the inspection notebook becomes even more ambiguous with "clean" meaning either that the floor was cleaned of debris or that it did not possess any debris. Similarly, "clear" could mean that the aisle possessed no debris or that the debris was cleaned. Ms. Archer's testimony further revealed that the times logged in the inspection notebook do not reflect the amount of time it took to inspect the store, but rather it merely reflected the amount of time that she was away from the office.
Moreover, Super Value has no policy as to how that inspection is to be conducted. It prefers, instead, to leave it to the discretion of the employee doing the inspection to either walk up and down each aisle or to inspect by standing at the end of each aisle and looking down the aisle for the presence of debris. It is also discretionary as to whether the employee chooses to note the occurrence of an accident in the inspection notebook. Mr. Catois stated that a separate accident report was filled out, negating the need to note Ms. Saucier's accident in the inspection notebook. However, some accidents are reported in the notebook. In the present case, Ms. Archer's testimony that she inspected the produce aisle, was not corroborated by any records, nor is there any notation that a lemon was ever on the floor in the produce aisle. Ms. Archer's demeanor, as noted by the trial judge, and her remarkable memory of the events of August 5, 1991, along with her relative lack of memory of the day before or after August 5, 1991, and her testimony contrary to that of Mr. Catois as to the meanings of "clean" and "clear" in the inspection notebook, cast suspicion on her testimony. The failure of Super Value to have in place a uniform, mandatory, non-discretionary, clean-up and safety procedure reveals a lack of reasonable care on its part. *1314 Cf., Davis v. Wal-Mart, Inc., 594 So.2d 557 (La.App. 3d Cir.1993), where this court held that Wal-Mart's clean-up and safety procedure was more than "reasonable" and adequate to exculpate it from any liability in connection with the plaintiff's accident.
We find that the evidence in this case preponderantly shows that the lemons were stacked in a dangerous manner in the produce aisle of Super Value on the date of this accident. The photographs reveal and Mr. Catois, the assistant manager, testified that the lemons were stacked one on top of the other at an angle toward the floor on the date of Ms. Saucier's accident. The fruit would often roll off of the shelf and onto the floor in which instances he would pick them up and replace them on the shelf, thus indicating Super Value's knowledge of the propensity of a lemon to roll off of the shelf and onto the floor. Furthermore, the testimony of Ms. Saucier, as to the right side of the produce aisle being full of customers and Ms. Archer, as to the store's busy hours, reveals that at the time of the accident, there were many people in the produce aisle near the produce shelving. Ms. Archer testified that nothing could go under the pallets upon which the displays were sitting although the pallets sit a couple of inches above the floor and that upon her alleged inspection of the produce aisle, she did not check under the pallets. Consequently, there is no way she could have known whether a lemon had rolled under the display pallet. Also, the testimony of the Super Value employees revealed that on the date of the accident, there were more displays in the produce aisle than normal. This being the case, Ms. Saucier has proven that Super Value created a condition which presented an unreasonable risk of harm and that it did not use reasonable care. For those reasons, we conclude that the trial judge below did not err in allowing her recovery.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.