836 So.2d 1184 (2003)
April Yvette GRAY, Plaintiff-Appellant,
v.
INVESTMENT CARS UNLIMITED, INC., and/or Southeast Foods, Inc., d/b/a County Market, Defendant-Appellee.
No. 36,691-CA.
Court of Appeal of Louisiana, Second Circuit.
January 29, 2003.
Bruscato, Tramontana & Wolleson by P. Scott Wolleson, for Appellant.
Cook, Yancey, King & Galloway by Lee H. Ayres, Robert Kennedy, Jr., Shreveport, for Appellee.
Before CARAWAY, PEATROSS and DREW, JJ.
*1185 CARAWAY, J.
In this slip and fall case, the trial court determined that there was insufficient evidence for the so-called "temporal element" establishing any length of time that the spill had remained on the merchant's floor. Summary judgment for the merchant was granted. From our review of the evidence, we find a material issue of fact concerning the absence of other customers in the store for an extended time during the early morning hours prior to the accident. Accordingly, we reverse the trial court's grant of summary judgment.

Facts
April Yvette Gray ("Gray") and her son visited defendant, Southeast Foods, Inc. d/b/a County Market's ("County Market") store in Monroe to grocery shop on January 25, 1995. After Gray picked up her son from work around midnight, they drove to the store together. The accident occurred at approximately 1:45 a.m., when Gray allegedly slipped on stray wet grapes on the floor of the store's produce section and was injured. Subsequently, she filed suit to recover damages resulting from the accident.
County Market ultimately moved for summary judgment. Evidence in the form of supporting affidavits and depositions were offered to show that the store's employees were neither aware that the grapes were on the floor, nor did they know how the grapes got there or how long they had been there. Gray's written opposition is not of record, but her counsel appeared at the hearing and argued in opposition thereto.
Eugene Lewis ("Lewis"), a grocery stocker working that night, testified in his deposition that he talked to Gray after she fell. It so happened that the two knew each other because a friend of Gray's was a former girlfriend of Lewis. Lewis testified that "[Gray] came around and told me she had fell, and I told her to show me where she had fell, and she took me around there and showed me." Lewis further testified that there was "barely anybody in the store" that night. When Lewis was questioned in deposition concerning the affidavit[1] he had given to Gray's counsel alleging that "no customers had been in the store for about one hour" that night, he stated, "I would say that's true." Although admittedly, Lewis would not be able to constantly see whether any other customers were in the store due to the aisle configuration, he insinuated that he could often hear whether or not other customers were in the store, even if he couldn't see them. He stated that while there may have been other customers in the store, "they'd have had to been mighty quiet." Lewis' Southeast Foods affidavit also stated that he was able to see Gray when she entered the store that night, before she fell.
The trial court's written reasons for judgment weighed Lewis' Southeast Foods affidavit, and characterized it as unhelpful in establishing Gray's claim that the store would have had constructive notice of the grapes on the floor. Also, considering Lewis' other affidavit, the trial court noted that Lewis stated that the produce crew had already quit working that evening, and that at the time Gray fell, the floor maintenance crew had not yet arrived to begin working on the store floors. The affidavit also stated that the store's aisle/floor inspection log showed the last aisle check to have been performed at 10:00 p.m., 3½ to 4 hours before Gray fell.
*1186 The evidence presented by Gray's son, Melvin, consisted of deposition testimony that he saw the two grapes on the floor in a small puddle of water after his mother slipped on one of the two. One grape was smashed, the other grape was still plump. Lewis testified that the grapes were "brownish" in color. Gray's deposition testimony indicated that she did not see anyone else in the store that night, and that she was walking through the produce section on the way to look at greeting cards when she slipped.
The trial court weighed Southeast Foods' argument that the green grape's discoloration was ineffective to show that the grapes had been on the floor for an unreasonable length of time. The trial court concluded that testimony concerning the color of the grapes, and whether their color had changed from green to brown, was insufficient to satisfy the temporal element required for Gray to prevail on her claim against the store. Therefore, the trial court granted summary judgment for Southeast Foods. It is from this judgment that Gray appeals.

Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); McKoin v. State Farm Fire and Cas. Co., 36,429 (La.App.2d Cir.10/23/02), 830 So.2d 437. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Leckie v. Auger Timber Co., 30,103 (La.App.2d Cir.1/21/98), 707 So.2d 459. When a motion is made and supported as required by La. C.C.P. art. 966, the adverse party may not rest on the mere allegations or denials of his pleading, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967; McKoin, supra. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kennedy v. Holder, 33,346 (La. App.2d Cir.5/10/00), 760 So.2d 587.
Under the provisions of La. C.C.P. art. 966(C)(2), when a party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but instead to point out the absence of factual support for one or more elements essential to such claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Row v. Pierremont Plaza, L.L.C., 35,796 (La.App.2d Cir.4/3/02), 814 So.2d 124, 128.

Discussion
On the date of the accident,[2] the pertinent provisions of the slip and fall *1187 statute applicable to merchants, La. R.S. 9:2800.6 (the "Statute"), stated:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive Notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
In the absence of proof that a hazardous spill on the merchant's floor was caused by the merchant and not a customer, the duty to keep the floor in a reasonably safe condition must be shown to have been breached by some proof of an inadequate inspection procedure in order for the plaintiff to prevail. See, Holden v. Louisiana State Univ. Medical Ctr. in Shreveport, 29,268 (La.App.2d Cir.2/28/97), 690 So.2d 958, writ denied, 97-0797 (La.5/1/97), 693 So.2d 730. In this regard, "constructive notice" under the Statute requires proof that the unsafe condition existed for such a period of time that it would have been discovered upon proper floor inspection by the merchant.
In White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, the Supreme Court held that the constructive notice provision contains the "temporal element," requiring the plaintiff to make a positive showing of the existence of a hazardous condition prior to the fall. Whether the condition exists for a sufficient length of time for a merchant to discover the condition is necessarily a question of fact, but a claimant who simply shows that the condition exists, without the additional showing that it existed for some time before the fall, does not carry the burden of proving constructive notice required by the statute. White, 699 So.2d at 1084. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden. Id. at 1084, 1085. In Crawford v. Ryan's Family Steak Houses, Inc., 31,911 (La. App.2d Cir.5/5/99), 741 So.2d 96, this court concluded that the applicable rules of evidence allow for proof of this statutory temporal element by both direct and circumstantial evidence.
The time consideration for the "temporal element" considers the length of time that the spill remained on the floor and the time when the merchant last inspected the floor. In this case, the evidence showed that County Market last inspected the floor 3½ to 4 hours before the accident. Yet, the trial court determined that Gray had failed to produce factual support sufficient to establish proof of when the spill occurred. The trial court stated:

*1188 What this all comes down to is whether the testimony about the color of the grapes on the floor is sufficient for the Court to conclude that the grapes were on the floor long enough to have changed colors from green to "brownish," and therefore long enough to meet the temporal element required by law.
The court then rejected the suggestion that the facts concerning the grapes' color were material for the purpose of determining the temporal element.
We are inclined to agree with the trial court that the evidence presented by both sides concerning the grape coloration and condition does not establish with any degree of certainty the length of time the grapes had been on the floor. As County Market demonstrated with its evidence, discoloration or spoiled grapes may exist in any bunch of grapes sold. Therefore, any customer's handling of the grapes could have dislodged "brownish" or spoiled grapes. The merchant does not insure the patron's safety for every accident. Jefferson v. Costanza, 628 So.2d 1158 (La.App. 2d Cir.1993). The presence of other members of the public passing through the merchant's store raises a significant possibility that a spill was caused by the negligence of a third person. Holden, supra.
Because both sides focused on the grape coloration dispute, another issue of fact appears to have been discounted. From our review of the testimony of Lewis and Gray, there is a sufficient issue of fact concerning the absence of other customers in the store for a lengthy period of time prior to the accident. Without the presence of other customers in the store before the accident, it may be inferred that either (i) the spill was caused by a customer at a much earlier time and had remained undetected for an unreasonable amount of time, or (ii) a store employee had caused the grapes to spill during the extended period of time when customers were not there.
A fair reading of Lewis's testimony from his affidavits and deposition reveals his belief that no other customers were in the store for an extended period of time. Other customers would presumably have been randomly traversing the store aisles while Lewis was also moving around performing his stocking duties. He stated that his work as a stocker required him to work on all aisles in the store. While working, he saw Gray's entry into the store. Yet he remembered no other customer's entry for an extended time before Gray's arrival. Lewis's view that no customers had been in the store is corroborated somewhat by Gray's testimony that the store had no other customers. While Lewis's testimony also shows that he cannot state with certainty that no other customers had shopped in the hour before the accident, one may draw that inference of fact from his testimony and the circumstances.
We recognize that the lack of customer traffic is also a favorable factor for the merchant when gauging the reasonableness of the merchant's inspection procedure. Nevertheless, another function of the inspection process is to address spills which may have been occasioned by the store's own employees' acts, especially during a period of restocking. Additionally, the inspection procedure for certain areas of the store may require more care. In Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir.1993), the court found that the merchant had knowledge of the propensity of fruit to roll off the shelf in the produce area. Saucier was cited with approval in White, supra, note 4. In this case, testimony concerning the packaging of grapes and problems with loose grapes may indicate an issue similar to the one in Saucier. These issues are factors in this case which the trier-of-fact must weigh and which we may not weigh in the context of this summary judgment.

*1189 Conclusion

In summary, we find that a trier-of-fact could accept the testimony indicating that County Market had no other customers for an extended period of time before Gray's accident. Gray presented sufficient evidence to create that material fact dispute. The disputed fact is material because if true, it may be determined that the spilled wet grapes had remained on the merchant's floor "for such a period of time that it would have been discovered if the merchant had exercised reasonable care." The summary judgment must therefore be reversed. Costs of this appeal are assessed to appellee.
REVERSED.
NOTES
[1] Southeast Food's counsel obtained a somewhat countervailing affidavit of Eugene Lewis to support its motion for summary judgment; Southeast's is the only one of Lewis' two affidavits contained in the record and is referred to as "Southeast Foods affidavit."
[2] The statute was subsequently amended effective May 1, 1996, however, the amendment was not retroactive; see White v. Wal-Mart Stores, Inc., supra.