KNOLL, Judge.
The sole issue on appeal concerns plaintiffs quantum award. The award to Ferdinand Hebert is the primary issue, because his award was for an aggravation of a preexisting condition.
Appellant, City of Lake Charles, ⅛ oeals the judgment of the trial court awai ling Ferdinand Hebert and Helen Hebert $163,-000 and $6,500, respectively, for personal injuries they received. The City of Lake Charles assigns as error that the trial court committed manifest error by awarding excessive damages, and finding that Ferdinand Hebert suffered an aggravation of a preexisting condition as a result of the accident. We affirm.
The learned trial judge favored us with excellent written reasons for judgment which we adopt and incorporate herein as our own opinion, set forth below:
“On August 19, 1987, petitioners, Ferdinand Hebert and Helen Hebert, were headed west on Contour Drive in the city of Lake Charles when suddenly, and without warning, a front-end loader owned by the City of Lake Charles, and being operated by their employee, Wilson Gotreaux, backed out of a vacant lot and struck Mr. Hebert’s 1986 Ford F150 pickup truck, resulting in injury to Ferdinand and Helen Hebert.
Defendant stipulated liability on the part of the City of Lake Charles, and on total past-due medical expenses, in the amount of $15,325.37 for Ferdinand Hebert, and for $1,466.91 incurred by Helen Hebert. Defendant further stipulated as to the damage to Mr. Ferdinand Hebert’s 1986 Ford F150 pickup truck in the amount of $1,428.95.
The only issue before this Court is the amount of damages to be awarded to Ferdinand Hebert and Helen Hebert.
The Court shall first take up the issue of general damages due Helen Hebert. At the time of the accident, Helen Hebert was wearing her seat belt. Mrs. Hebert testified that immediately after the accident she attempted to get out of the truck, and scratched her arms on the debris on the side of the road. She stated she was upset at the time, and these were the only injuries she noticed immediately after the accident. However, upon arriving home, she began to experience neck and shoulder pain, which she tried to control with aspirin. The pain continued, and she sought the treatment of Dr. Donald England, a chiropractor, practicing in Lake Charles. Dr. England initially saw Helen Hebert on August 26, 1987. At the time Dr. England saw Helen Hebert, she was complaining of pain in the back of her neck, suboccipital headaches, pain in the top of her left shoulder, thoracic pain and neck, crackling when she moved it. Dr. England undertook conservative treatment of Mrs. Hebert’s symptoms, consisting of heat, electrofibrillation and manual manipulations. Mrs. Hebert continued to experience a great deal of pain, and therefore, Dr. England referred her to Dr. Clark Gun- *790 derson, an orthopaedic surgeon, for his opinion.
Dr. Gunderson saw Mrs. Hebert on September 25, 1987. On that day, Mrs. Hebert complained of intermittent pain in the back of hér neck, which radiated over her left shoulder. She further complained of dizziness and ringing in her ears. Dr. Gunder-son examined Mrs. Hebert, finding tenderness in the left side of her neck posteriorly, as well as over the scalene muscles on the left side. She had diminished left lateral reflexes on the left side. Dr. Gunderson was of the opinion that as a result of the accident, Mrs. Hebert suffered a cervical straining injury of mild to moderate degree, and referred her back to Dr. England for further conservative treatment.
Dr. England continued to treat Mrs. Hebert conservatively until December 4, 1987, at which time he discharged her from her [sic] care. Her only continued complaint at the time of discharge was the ringing in her ears.
Mrs. Hebert testified that she still suffers from intermittent ringing in her ears, is unable to clean her oven, as the bending of her neck makes her dizzy, and feels she has lost some of her strength in her shoulders.
In view of the injuries, duration of treatment, and her continued ringing in her ears, the Court feels that the sum of $6,500.00 for general damages would adequately compensate her for injuries. In addition to the general damages, she is also awarded past medical expenses in the sum of $1,466.91, for a total award to Mrs. Helen Hebert of $7,966.91.
The next issue is what are the total damages due Mr. Ferdinand Hebert as a result of the accident of August 19, 1987.
At the time of the collision, Mr. Hebert was wearing his seat belt. The front-end loader struck Mr. Hebert’s truck on the driver’s side, pinning Mr. Hebert in the vehicle, as he was unable to unbuckle his seat belt.
Prior to this accident, Mr. Ferdinand Hebert had prior neck surgery, consisting of an anterior diskectomy, and fusion at the C6-7 level, which surgery was performed by Dr. William Foster in 1976. Dr. Foster also performed at that time a carpal tunnel release. The surgery was successful, and Mr. Hebert was able to continue his employment in the oil industry, and had no further neck complaints until the time of this accident.
In 1982, Mr. Hebert suffered a back injury while working offshore. Dr. Raggio, a neurosurgeon, testified via deposition that Mr. Hebert had four surgeries to his back. The first occurred on May 25, 1982, at which time a complete laminectomy at L5, and foraminotomy at the L4 and L5 levels was performed by Dr. John Raggio. Thereafter, on September 16, 1982, a posterior laminectomy interbody fusion was performed by Dr. Raggio and Dr. William Akins, an orthopaedic surgeon. Again, in March, 1983, Mr. Hebert underwent an anterior interbody fusion, performed by Dr. Raggio and Dr. Akins, wherein they fused the L4-5 and L5-S1 vertebrae. Unfortunately, this was not successful, and in October, 1984, a posterior interbody fusion with fibular strut graft was performed at the L4-5 and SI levels by Dr. Akins. Mr. Hebert remained under the care of Dr. William Akins until January, 1986, at which time he was discharged from his care.
From January, 1986, until the time of the accident Mr. Hebert had no further treatment for his back injuries. Mr. Hebert tolerated his surgeries well, and after his release in January, 1986, was able to take long walks, prepare and take care of his garden, dance, and take his fishing boat out, all on a regular basis.
Immediately after the accident of August 19, 1987, Mr. Hebert experienced neck and back pain. He initially attempted to see Dr. Akins, but was told he no longer practiced in Lake Charles. Thereafter, he saw Dr. John Raggio for his neck and back complaints. Dr. Raggio testified that he initially saw Mr. Hebert on August 26, 1987, at which time Mr. Hebert informed him that he had been involved in an automobile accident on August 19, 1987. Mr. Hebert was complaining of low back and neck pain. Dr. Raggio’s initial diagnosis *791 was low back pain, cervical and lumbar strains, resulting from the August 19, 1987, accident. On September 2, 1987, Dr. Raggio prescribed three weeks of physical therapy for Mr. Hebert’s neck and low back complaints. On October 7, 1987, Mr. Hebert complained of loss of erection due to back pain. On November 20, 1987, Dr. Raggio recommended he re-start physical therapy, and also prescribed a T.E.N.S. unit for Mr. Hebert, to aid Mr. Hebert in his pain management. Additionally, Dr. Rag-gio found a fatty tumor, and directed Mr. Hebert to see another physician. Dr. Rag-gio last saw Mr. Hebert on December 8, 1987, at which time he was still taking medication, and wearing his T.E.N.S. unit, which was helping his pain management.
Mr. Hebert next sought the help of Dr. Earl Stagg, his family doctor. Dr. Stagg saw Mr. Hebert on January 21, 1988, for a lump on the back of his head. Dr. Stagg recommended Mr. Hebert see Dr. Vines, his associate, for the removal of the lump. Dr. Stagg also recommended Mr. Hebert see Dr. William Foster for his continued neck complaints.
Dr. Foster, a neurosurgeon, saw Mr. Hebert on February 29, 1988. At that time, Mr. Hebert was complaining of severe bilateral neck pain, shoulder pain, and arm pain of greater severity on the left. He complained of paresthesia, or pins and needles sensation. Physical exam showed reflexes were diminished considerably on the left, and he had diminished sensation following the C6-7 dermatones on the left. At that time, Mr. Hebert made no complaints referable to his back, and therefore, Dr. Foster did not examine his back. Dr. Foster ordered a CT scan performed, which showed several abnormalities, and therefore, requested an EMG to be performed by Dr. Fayez Shamieh on March 8, 1988. The EMG studies showed C5 and C6 nerve root lesions on both sides, which were compatible with his complaints. On March 27, 1988, Dr. Foster hospitalized Mr. Hebert, and performed a cervical myelogram, which showed a small extradural defect at C5-6 level. A repeat CT scan showed a mild posterior bulging at C5-6. On April 4, 1988, Dr. Foster performed an anterior cervical diskectomy at the C5-6 level. Dr. Foster found a tear in the posterior longitudinal ligament. He removed a fragment of the disc from this area, and removed bone spurs off the margin of C5. Mr. Hebert did quite well, and was discharged from the hospital on April 5, 1988. He did quite well following the surgery, and was seen several times, and on May 3, 1988, Mr. Hebert began complaining of back pain. At that time, Dr. Foster carried Mr. Hebert through a low-back examination. He found marked tenderness in the low back, and obvious restriction of flexion. He also found mild muscle spasms.
Based upon his back examination, Dr. Foster ordered an EMG performed by Dr. Fayez Shamieh. The EMG studies showed a mild L5 root lesion on the left, and chronic L5-S1 radiculopathy on the left. Dr. Foster then referred Mr. Hebert to Dr. Clark Gunderson for a second opinion.
Dr. Gunderson examined Mr. Hebert on August 16, 1988, and found lumbar muscle spasms and diminished strength. Dr. Gun-derson recommended that Mr. Hebert undergo another period of physical therapy, at a cost of of [sic] $600.00, and that he continue to wear his T.E.N.S. unit if it helped him. Dr. Gunderson would not recommend surgery due to his prior back surgeries.
It was Dr. Gunderson’s opinion that the accident of August 19, 1987, aggravated Mr. Hebert’s prior back condition, and further stated he may have increased pain for the rest of his life. Dr. Foster concurred in Dr. Gunderson’s opinion as to the cause and effect of the accident on Mr. Hebert’s back.
Further, it was Dr. Foster’s opinion that as a result of the accident, Mr. Hebert suffered a ruptured disc at the C5-6 level, which necessitates surgery, and from which Mr. Hebert suffered an addition [sic] ten (10%) per cent permanent partial disability to his neck, giving him a total of twenty (20%) per cent permanent partial disability to his neck. Mr. Hebert has a permanently stiff neck, which will inhibit his ability to drive under certain conditions.
*792 Dr. Litel, a neurosurgeon who testified via deposition, concurred in Dr. Poster’s opinion as to the cause, the effect, and percentage of disability suffered to Mr. Hebert’s neck as a result of the accident, but was of the opinion that Mr. Hebert’s neck stiffness was muscular, rather than skeletal, in nature. Further, Dr. Litel was of the opinion that Mr. Hebert suffered a lumbosacral strain to his back, which aggravated his prior back condition, but was of the opinion that Mr. Hebert, as of the date of the examination, had returned to pre-accident status.
Based upon the stipulation of the parties, testimony adduced at trial, and by deposition, the Court finds that as a result of the accident of August 19, 1987, Mr. Ferdinand Hebert suffered a ruptured disc at the C5-6 level, which injury necessitated surgery, and for which condition he is left with a permanently stiff neck. Further, it is uncontradicted, and the Court finds, that from January 1986, until the accident of August 18, 1987, Mr. Hebert was not taking medication for his back condition, did not visit any physicians for his back, and was coping very well with his back condition. As a result of this accident, Mr. Hebert is presently on medication, is wearing a T.E.N.S. unit, and his back condition was significantly aggravated by the accident of August 19,1987, which aggravation will continue for an undetermined time, possibly for the remainder of his life. The quality of Mr. Hebert’s life and life style has been greatly diminished.
Therefore, the Court finds that the sum of $163,000.00 will fairly and justly compensate Mr. Hebert for his pain, suffering, and disability, and the disruption of his life style, and for future medical expenses. Further, the Court finds Mr. Hebert is entitled to recover the sum of past medical expenses in the amount of $15,325.37. In addition, Mr. Hebert is awarded the sum of $1,428.95 for the damage to his 1986 Ford F150 pickup truck. The total award to Ferdinand Hebert is $179,754.32.”
The jurisprudence is firmly established that to reverse a quantum award or a factual finding, we must find manifest error. Reck v. Stevens, 373 So.2d 498 (La.1979); Rosell v. Esco, 549 So.2d 840 (La.1989). After a careful review of the record, we cannot say that the trial court committed manifest error. Moreover, we find the record clearly supports that the accident caused Ferdinand Hebert to suffer an aggravation of a preexisting condition.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellant, City of Lake Charles.
AFFIRMED.
FORET, J., dissents and assigns written reasons.