615 So.2d 378 (1993)
Karen PARKER
v.
WINN-DIXIE LOUISIANA, INC.
No. 92-CA-885.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1993.
Charles B. Colvin, Stegeman, Colvin & Perry, Gretna, for Karen Parker, plaintiff/appellee.
Paul M. Lavelle, Joseph B. Landry, Mary E. Brennan, Guste, Barnett & Shushan, New Orleans, for Winn-Dixie Louisiana, Inc., defendant/appellant.
Before KLIEBERT, BOWES and GAUDIN, JJ.
*379 BOWES, Judge.
Defendant, Winn-Dixie Louisiana, Inc., appeals from a judgment awarding plaintiff $15,000.00, together with medical expenses of $1,170.00, plus interest and costs, for damages sustained when plaintiff slipped and fell in defendant's store. We amend the judgment, and as amended, affirm.

FACTS
On January 6, 1991, Ms. Karen Parker, plaintiff herein, entered defendant's store to purchase hair dye and meat. After wandering around the store for two or three minutes, she located the aisle carrying hair dyes and made her selection. While reading the box, she turned and started to walk toward the meat counter. She slipped on a clear liquid and fell, landing on her lower back and left arm.

ANALYSIS
Winn-Dixie Louisiana, Inc. (hereinafter "Winn-Dixie") first alleges that the trial court erred in finding that plaintiff slipped and fell due to a negligent and/or hazardous condition on the floor. Winn-Dixie's argument in this regard is two-fold. It alleges that plaintiff did not prove that the alleged fall was an accident, instead of a "staged" event, and that plaintiff did not prove that Winn-Dixie had constructive notice of the hazardous condition.
The elements of a cause of action in tort are fault, causation and damages. Gresham v. Davenport, 537 So.2d 1144 (La. 1989). In addition, LSA-R.S. 9:2800.6 provides that:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) `Constructive notice' means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
(2) `Merchant' means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695.
[Emphasis supplied].
At the trial, plaintiff testified that she entered the store at around 10:00 p.m. and walked by the manager's "box" and the cash registers. Someone was sitting in the manager's area. She did not know where in the store the hair dye was located so she walked down the first aisle, and then the second aisle where the hair dye was located. She did not see anyone inspecting the aisles of the store.
Plaintiff stood in front of the various kinds of hair dye while contemplating her selection. She picked up a box of hair dye and, while reading it, began to walk away. She then felt her feet slide out from under her and she landed "hard" in a sitting position. The accident was witnessed by a woman identified only as "Gail" and by Chester Aguillard, who entered the aisle at the same time that plaintiff hit the ground.
Robert Weber was employed by Winn-Dixie and he went to the scene of the *380 accident. He testified that it was the manager's job to conduct safety checks, and that the manager on duty, Ivy Boudoin, was in his booth at the time of the accident and probably had been there for some 20-30 minutes because that would have been normal due to the fact that the accident occurred near closing time. Mr. Weber also testified that he was in the process of inspecting the aisles when the accident occurred, and that he would have been the one to do the aisle inspection at that time. Neither he nor anyone else had inspected the aisle five to ten minutes before the accident occurred. Mr. Weber further testified that he did not know the last time the aisle had been checked prior to the accident.
Mr. Weber testified that he heard a "commotion" on the second aisle, so he went to investigate. He stated that he saw Ms. Parker "lower" herself onto the floor; however, he admitted, upon questioning by the court, it was possible that what he could have seen was the plaintiff lowering herself after attempting to get up from the fall.
Mr. Weber inspected the area and found hydrogen peroxide on the floor. He also found a bottle of hydrogen peroxide under the rack. The top of the bottle was on; however, the safety seal underneath had been punctured.
A court of appeal, may not set aside the trial court's factual findings in the absence of manifest error or unless the trier of fact is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court, after consideration of the testimony presented, apparently determined that the plaintiff slipped and fell as a result of slipping into a puddle of hydrogen peroxide. We cannot say that the trial court was clearly wrong in this finding.
Furthermore, after consideration of the testimony of Ms. Parker in which she stated that a person was in the manager's booth at the time of the accident, and Mr. Weber's testimony that the manager was responsible for safety checks, that he (Mr. Weber) was in the process of inspecting the aisles and that aisle two had not been inspected five to ten minutes prior to the accident, we believe that a rational trier of fact could have concluded that Winn-Dixie had constructive notice of the liquid substance which was spilled on the floor as defined in LSA-R.S. 9:2800.6. Accordingly, we find no manifest error in the trial court's decision finding Winn-Dixie liable for plaintiff's damages.
Winn-Dixie next alleges that the trial court erred in denying its motion for involuntary dismissal on the grounds that plaintiff did not show constructive notice, made at the close of plaintiff's case.
LSA-C.C.P. art. 1672 B provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Under this article, the trial court is given discretion to decline to render judgment until after defendant has presented his case. Thus, the decision of the trial court denying of a motion for involuntary dismissal at the close of plaintiff's case presents nothing for the appellate court to review. See Blount v. Peabody Shoreline Geophysical, 439 So.2d 565 (La.App. 1 Cir. 1983); Miller v. Upjohn Co., 461 So.2d 676 (La.App. 1 Cir. 1984).
As discussed, supra, we find no manifest error in the trial court's ultimate decision that plaintiff adequately proved her cause against defendant. We find this assignment to be without merit.
In its third allegation of error, Winn-Dixie alleges that the trial court erred in admitting the deposition of Chester Aguillard into evidence.
During presentation of the case, plaintiff's attorney offered the deposition of *381 Chester Aguillard, and professed to the court that three attempts to locate and to subpoena Mr. Aguillard had failed. Winn-Dixie objected, alleging that the deposition was taken for purposes of discovery and that plaintiff did not present subpoena returns.
However, it was stipulated at the time of the taking of the deposition that "the deposition of aforementioned witness is hereby being taken ... for all purposes, in accordance with law." In addition, plaintiff's counsel directly stated, on the record, that he had attempted to locate and subpoena Mr. Aguillard and that his attempts were fruitless.
The trial court is vested with great discretion in making a determination as to the unavailability of a witness for the purpose of receiving his deposition into evidence. We find no abuse herein. See Giesler v. United States Fidelity and Guar., 498 So.2d 292 (La.App. 4 Cir.1986).
In its final allegation of error, Winn-Dixie alleges that the trial court's award of damages was excessive.
In the assessment of damages in cases of offenses and quasi offenses, much discretion must be left to the judge or jury, and before an appellate court can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. In the event the appellate court finds from the record an abuse of discretion, the award may be disturbed by lowering it to the highest point which is reasonably within the discretion afforded the trier of fact.

American Motorist v. American Rent-All, 579 So.2d 429, 433 (La.1991).
In this case, plaintiff was treated by a chiropractor, Dr. William Batherson. He testified that he examined Ms. Parker the day after her accident. He observed that she experienced pain when attempting to move her lower back and, upon examination, he found tenderness and spasm of the right paralumbar musculature and tenderness of the lumbosacral joint. After performing a variety of tests, which revealed back pain, spasm and a diminished right ankle jerk reaction, Dr. Batherson concluded that plaintiff was suffering from a sprained lumbosacral joint with possible pressure on the S-1 nerve root. Plaintiff was treated for five months, during which time her condition progressed rather slowly, but did improve. He last saw her on June 13, 1991 at which time he found plaintiff's condition most improved; however, she still exhibited diminished right ankle jerk, causing some concern about a possible radicular problem. Plaintiff did not seek additional treatment with any other health care provider.
At trial, plaintiff testified that her back pain had mostly resolved, and she would experience soreness in her lower back only when it rained.
We conclude that based on this evidence before us the award of $15,000.00 in general damages, plus $1,170.00 for medical expenses for this soft tissue injury which was treated conservatively for five months, was excessive and we find that $7,500.00 is the highest award reasonably within the trial court's discretion. See Bauer v. White, 532 So.2d 506 (La.App. 1 Cir.1988); Webb v. Jordan, 540 So.2d 977 (La.App. 2 Cir.1989); Hebert v. National Union Ins. Co., 567 So.2d 788 (La.App. 3 Cir. 1990); Harris v. Schexnaydre, 560 So.2d 55 (La.App. 5 Cir.1990).
For the above discussed reasons, the judgment of the trial court is amended to award plaintiff $7,500.00 in general damages, and as amended is affirmed. Costs are assessed equally against appellant, Winn-Dixie Louisiana, Inc. and appellee, Karen Parker.
AMENDED, AND AS AMENDED, AFFIRMED.