645 So.2d 647 (1994)
Maxine WELCH and James M. Welch, Individually and on Behalf of Their Minor Children, Wendy Welch and Sabrina Welch
v.
WINN-DIXIE LOUISIANA, INC., and XYZ Insurance Company.
No. 92 CA 2372.
Court of Appeal of Louisiana, First Circuit.
August 22, 1994.
Writ Granted November 29, 1994.
Michael J. Samanie, Houma, for plaintiffs-appellees.
Carlos E. Lazarus, Houma, for defendant-appellant Winn-Dixie Louisiana.
Before WATKINS, SHORTESS, GONZALES, FOGG and PARRO, JJ.
*648 SHORTESS, Judge.
Maxine Welch (plaintiff) filed suit against Winn-Dixie Louisiana, Inc.[1] (defendant), alleging she was injured when she slipped in cooking oil and fell in defendant's store in Houma, Louisiana, on June 25, 1991. She also asserted a claim for loss of consortium on behalf of her minor daughters Wendy Welch and Sabrina Welch.[2] The jury entered a verdict in favor of plaintiff and fixed her damages at $257,000.00. The jury further found plaintiff's daughters had not suffered a loss of consortium. The trial court rendered judgment in accordance with the jury's verdict. Defendant has appealed.[3]

LAW
Before 1975, slip-and-fall cases generally were governed by ordinary negligence principles. A plaintiff had to prove every element of his case, including the lack of reasonable inspection procedures by the merchant and actual or constructive notice of the hazardous substance. See Lofton v. Travelers Ins. Co., 208 So.2d 739, 741 (La.App. 3d Cir.), writ denied, 252 La. 457, 211 So.2d 327 (1968). In a few cases this burden was found to be too onerous on the plaintiff. In Lang v. Winn-Dixie Louisiana, 230 So.2d 383 (La.App. 1st Cir.1969), writ denied, 255 La. 815, 233 So.2d 252 (1970), and Joynes v. Valloft & Dreaux, 1 So.2d 108 (La.App.Orl.Cir.1941), the courts held that where plaintiff proved a dangerous object caused him to slip and fall, the merchant had the burden of making a prima facie showing that it made reasonably careful and thorough inspections. In 1975, the Louisiana Supreme Court adopted the rule first enunciated in Joynes, holding in Kavlich v. Kramer, 315 So.2d 282 (La.1975), that when the plaintiff establishes he slipped and fell on a substance on the merchant's floor, the "burden then shifts to the defendant to go forward with the evidence to exculpate itself from the presumption that it was negligent." 315 So.2d at 285.
The supreme court increased the defendant's burden with the succeeding cases of Gonzales v. Winn-Dixie Louisiana, 326 So.2d 486 (La.1976); Brown v. Winn-Dixie Louisiana, 452 So.2d 685 (La.1984); and McCardie v. Wal-Mart Stores, 511 So.2d 1134 (La.1987). In Brown the court stated:
The critical effect of the partial shifting of the evidentiary burden was the virtual elimination of proof of actual or constructive knowledge as an element of plaintiff's case.... Under the new evidentiary burden, the store operator is required to prove that his employees did not cause the hazard and that he exercised such a degree of care that he would have known under most circumstances of a hazard caused by customers.
452 So.2d at 686. Then, in McCardie, the court held that "[m]erely proving adequate clean up procedures is insufficient to prove a spill was not caused by one of the store's own employees." The supreme court reversed the lower courts in that case because the merchant "failed to prove that none of its employees caused the spill" as "[m]any of the employees who could have caused the spill were not asked to testify." 511 So.2d at 1136.
In reaction to McCardie, the Louisiana Legislature enacted Louisiana Revised Statute 9:2800.6 by Acts 1988, No. 714. The act provided the statute applied to all cases tried on or after its effective date, July 18, 1988. The statute provided that once the plaintiff proved he suffered damages as a result of a hazardous condition on the defendant's premises, the burden of proof shifted to the merchant to prove he acted in a reasonably prudent manner in exercising the duty of care he owed to the person to keep the premises free of any hazardous conditions. The statute explicitly provided the merchant need not introduce the testimony of every employee.
Two years later, the legislature amended Revised Statute 9:2800.6. This amendment *649 substantially changed the burden of proof. As a result of the amendment, the statute now provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.
We have reviewed the legislative history of this amendment, including the minutes of the House Civil Law and Procedure Committee and the Senate Committee on Judiciary A meetings. It is clear from those documents that the legislature intended to revert to the pre-Kavlich law.
Acts 1990, Number 1025, which amended Revised Statute 9:2800.6, provided in Section 2 that the act shall apply only to "causes of action which arise on or after the effective date of this Act," which was September 1, 1990. Plaintiff's cause of action, which arose June 25, 1991, is governed by the current version of Revised Statute 9:2800.6. Plaintiff thus had the burden of proving she slipped and fell due to a condition on defendant's premises which presented an unreasonable risk of harm, that the risk of harm was reasonably foreseeable, that defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence, and that defendant failed to exercise reasonable care.

FACTS
Defendant does not dispute plaintiff suffered an injury as a result of an accident in its store on June 25, 1991. Defendant further concedes this accident, a slip and fall in cooking oil, was due to a condition existing on its premises which presented an unreasonable risk of harm which was reasonably foreseeable. Defendant contends, however, plaintiff failed to meet her burden of proving it had actual or constructive notice of the condition prior to the accident.[4] Because notice and the exercise of reasonable care are the only disputed facts on the liability issue, we shall look only at facts pertinent to those issues.
Defendant called no witnesses on the liability issue. Plaintiff presented four witnesses to prove liability: herself; Cranston Ross, defendant's assistant manager on duty at the time of the accident; Vergie E. Pellegrin, defendant's seafood clerk at the time of the accident; and Ronald L. Quave, an assistant manager for defendant for 13 years before the accident. Ross still worked for defendant at the time of trial, but Pellegrin did not; she was a full-time student. Quave left defendant's employ in May 1991, about one month before plaintiff's accident. Their testimony is summarized below.
Amount of Oil
It is undisputed that oil was on the floor on aisle three, the area where cake mixes and cooking oil were displayed. No one saw the oil before the accident. Ross testified that when he saw the oil, four to five ounces were splattered in a one-foot area on the floor. Pellegrin testified there was a "lake" or "mass" of oil thinly spread over a two-and-one-half-foot by three-foot semicircle which *650 extended under the edge of the shelf. Plaintiff did not testify as to a specific quantity but did indicate she saw more oil than described by Ross and less than described by Pellegrin.

Visibility of the Oil
Plaintiff testified the oil was not visible because it was "shiny like the floor." Ross stated that because of his 19 years' experience in the grocery business, he could see things on the floor that casual observers might not. He stated he could definitely see oil on the floor. Pellegrin stated the oil was not obvious to a casual observer, but if she was looking for a hazard on the floor, she would see it.

Source of the Oil
Plaintiff testified she did not know the source of the oil or how long it had been on the floor.
Ross testified the cooking oil shelves had been restocked in the wee morning hours of the accident date. After the accident he looked for the source of the oil but found nothing. He checked the shelves and found no leaking or empty bottles and no glass on the floor. The only thing found on the floor was a white plastic cap, which Ross believed fit a vinegar bottle.
Pellegrin testified that in an effort to find the source of the oil she and Ross removed all the cooking oil from each shelf in the area. She found no oil dripping from any shelf. She physically felt all of the shelves but found no trace of oil and no sign that anything had dripped through the shelves onto the floor. She found no empty bottles or bottles missing even a portion of their oil, and no broken glass. The only thing found was a white screw cap. She thought the cap was too big to fit a vinegar bottle. She could not testify positively that it was an Astor oil cap. (It was the right size but had no expiration date on it as do Astor caps.)

Past Problems with Leaking Oil
Ross testified he did not recall any problems with leaking oil before this accident. Quave testified he had seen oil leak onto the floor in the past, but it was not a big concern; that he had seen bottles damaged during stocking when dropped or punctured with box cutters; that he would not place a damaged bottle on the shelf; that at impromptu meetings with other store managers the problem of damaged bottles being placed on shelves had been discussed, but he did not recall discussing this with Ross.
Quave stated damaged bottles of oil were usually discovered immediately, although he had seen some leaking bottles discovered "sometime in the future." But when those bottles were discovered, oil would be found on the shelves. He had also seen large oil spills when bottles fell over and the caps popped off. However, that problem was alleviated when manufacturers began using aluminum seals on the bottles. When he left defendant's employ in May 1991, all cooking oil bottles had aluminum seals.

General Inspection Procedures
Ross testified that as assistant manager he oversees the front operation of the store and checks on all the departments. He testified that when he is on duty, he inspects the floor constantly, walking the entire store every 10 to 15 minutes. He had no written instructions from defendant to do so; this is his "own set procedure."
Ross stated management personnel at the store "walk the store," and if an area needs to be swept or mopped, someone is assigned to do it. The store is completely mopped each night at closing time.
Pellegrin stated she had never seen a safety training film, but one of the first things she was taught when she began working for defendant was to constantly look for anything on the floor and to immediately clean anything found there. She testified all of defendant's employees were trained to look for hazards on the floor, and Ross and all of the managers were very strict about the floors. She did not specifically remember Ross's practice of walking the floor, but she knew all managers walked the floor, including aisle three.
Quave testified that while there was nothing in writing, defendant's upper management directed management personnel while on duty to inspect the floor at 15-minute intervals. The assistant manager's job specifically was to inspect the aisles, including *651 aisle three, every 15 minutes, and he and Ross both did so.

Inspection on the Day of the Accident
Ross was adamant that five minutes before this accident he inspected aisle three and saw no oil. He had been down the aisle to check the price on a box of cake mix. He testified that while checking the price, he inspected the entire aisle. He stated he was standing approximately five feet from the accident scene when he made this inspection. He further testified he had made his regular inspections at 10-to-15-minute intervals during the day.
Pellegrin stated she had seen Ross in the area five to ten minutes before the accident. She remembered seeing him because she had talked to him while she was dusting the spices in front of her seafood display. The seafood display was at the rear of the store perpendicular to aisle three.

DID PLAINTIFF PROVE NOTICE AND FAILURE TO USE REASONABLE CARE?
Plaintiff contends the testimony of Ross was not credible. If we disregard his testimony, what has plaintiff proven? She has shown that a relatively large amount of cooking oil from an undeterminable source was on aisle three of defendant's store; that the oil was not visible to the casual observer but could be seen by one looking for hazards; that in the past defendant occasionally had problems with slow leaks in oil bottles, but oil which leaked onto the floor was also found on the shelves; that no oil was found on the shelves after plaintiff's accident; that defendant had no written policy regarding floor inspections, but it was the practice of the store managers to inspect the aisles every fifteen minutes; and that Ross had been in the vicinity five to ten minutes before the accident. This evidence does not prove actual or constructive notice or failure to exercise reasonable care.
Plaintiff also contends the jury could have believed Ross's testimony that he inspected the floor five minutes before the accident but disbelieved that the aisle was clean. Thus, plaintiff contends, the jury could have found Ross negligently failed to discover the oil. However, plaintiff presented not a scintilla of evidence that the oil was actually on the floor when Ross made his inspection. Plaintiff had the burden of proving defendant had actual or constructive notice. She could not do this simply by offering Ross's positive testimony that the hazard did not exist and then asking the jury to conclude it did exist because Ross lacked credibility.
We have found five other cases decided under the current version of Revised Statute 9:2800.6. In Parker v. Winn-Dixie Louisiana, 615 So.2d 378 (La.App. 5th Cir.1993), the court affirmed a judgment in favor of the plaintiff based on testimony of the defendant's employee that the manager, who was supposed to conduct safety checks, had been in his booth for twenty to thirty minutes before the accident. In Cobb v. Wal-Mart Stores, 624 So.2d 5 (La.App. 5th Cir.1993), plaintiff carried her burden of proving constructive notice by showing the spill occurred four to five feet from a counter where at least two employees had a clear view of the aisle on which plaintiff slipped.[5]
In Oalmann v. K-Mart Corp., 630 So.2d 911 (La.App. 4th Cir.1993), the defendant presented no witnesses at trial but relied on its accident report. The court found plaintiff proved constructive notice that the floor of the store entranceway was wet based on the store's acknowledgement in the accident report that the weather conditions were "rainy," noting that the site of the accident was a large retail store with a constant influx of customers. The court further found plaintiff proved failure of the store to use reasonable care by showing the space provided on the accident report for listing the time of the last inspection was left blank, indicating no inspection had been made. In Treadaway v. Shoney's, Inc., 93-1668 (La.App. 4th Cir. 2/25/94), 633 So.2d 841, plaintiff proved by her testimony that the store's employee created a hazard by failing to dry the floor *652 properly after mopping in that she watched the employee mop and dry the floor and remove the "wet floor" signs before the floor was completely dry.
Finally, in Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir.1993), plaintiff slipped on a lemon in the produce aisle. The assistant store manager testified that lemons were stacked one on top of another, angling toward the floor, and often fell. Store inspections were conducted by the head cashier only once per hour, and no one ever looked under the pallets upon which displays were stacked, which could effectively hide an errant lemon. The testimony was contradictory as to when the store was last inspected before the accident. The court found plaintiff had proven the store created the hazard and failed to use reasonable care.[6]
The supreme court directs us in Stobart v. State, 617 So.2d 880, 882 (La.1993), to review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. In reviewing this record, we find the jury's conclusion was clearly wrong; it was not reasonable because there was no evidence to support it. Plaintiff offered no positive testimony of failure to inspect as in Parker, nor did she show any employee had a clear view of the accident site but failed to notice the spill as in Cobb. There is no evidence such as the accident report in Oalmann from which we can even infer defendant had notice of the oil. Plaintiff did not see an employee create the hazard as in Treadaway, nor did she have an admission by an employee of defendant as in Saucier that the store's display policy created a hazard. In short, the evidence presented by plaintiff simply does not support a finding that defendant had constructive or actual notice or failed to exercise reasonable care. Thus, the jury's factual findings are clearly wrong.
For the foregoing reasons, we reverse the judgment of the trial court and render judgment in favor of defendant, Winn-Dixie Louisiana, Inc., and against plaintiff, Maxine Welch, dismissing plaintiff's demands at her costs.
REVERSED AND RENDERED.
PARRO, J., concurs and assigns reasons.
FOGG, J., dissents with reasons to follow.
WATKINS, J., dissents for reasons assigned by FOGG, J.
PARRO, Judge, concurring.
I agree with the conclusion reached by the majority on a legal basis, but I believe the statute creates an almost impossible burden on a claimant in a case such as this one.
The primary duty owed by the merchant to persons who use his premises is to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. LSA-R.S. 9:2800.6(A). If a breach of this duty is alleged, the legislature has set forth the specific elements which a claimant must prove in order to be successful. LSA-R.S. 9:2800.6(B). Since the legislature has spoken, this court is compelled to give effect to the positive law governing the case before us.
Under the applicable standards of appellate review and the facts of this case, I have no difficulty in finding that the plaintiff met her burden of proof on every element of her cause of action except one, that being constructive notice. In particular, the plaintiff failed to prove the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. LSA-R.S. 9:2800.6(C).
The problem of proof in this regard lies in establishing "a period of time" that the condition existed. The end point of this period is determined as of the moment a person falls as a result of the condition. However, the beginning point of this period can only be determined by evidence showing either the inception of the condition or the point in time that it was observed by another person (other *653 than an employee). Proof of either factor is obviously difficult, if not impossible.
Perhaps the store could be locked immediately after the fall, and the name and address of every person in the establishment at the time of the accident could be obtained and furnished to the claimant for discovery purposes. Such a procedure would certainly assist the parties in ascertaining the truth, but seemingly such an undertaking would not be practicable. Therefore, it seems the only solutions to a claimant's dilemma are to either "get lucky" or convince the legislature to amend the statute to ease the burden of proof on a claimant.
For the foregoing reasons, I respectfully concur.
FOGG, Judge, dissenting.
I disagree with the majority's finding that the jury manifestly erred in finding that the defendant had actual or constructive notice of the hazardous condition prior to the accident.
In reaching this conclusion, the majority is not adhering to our appellate standard of review. We cannot set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a factfinder's determination, we must find from the record that a reasonable factual basis does not exist for the trial court's finding, and we must further determine that the record establishes that the finding is clearly wrong. Even though we may feel our own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
In the instant case, the facts clearly support the conclusion of the jury. Although Ross, the assistant manager, testified that he had inspected the aisle where the plaintiff fell five or ten minutes before the fall (the accident report states that the aisle was inspected ten minutes before the accident), the jury could have disregarded his testimony that he saw no oil on the floor at that time. The jury could have concluded that the oil was present but that Ross did not see it because he did not properly inspect the aisle. Such a conclusion would not be clearly wrong because Ross' reason for being on the aisle was not to inspect, but to check the price of some cake mix; he was on the aisle only for a minute to a minute and a half. Additionally, according to the testimony of the plaintiff and Pellegrin, the seafood clerk at the time of the accident, the place where the plaintiff fell was much farther down the aisle (15 to 30 feet) from the cake mix, where Ross had been; therefore, any view of oil would have been slightly obstructed by display islands next to the shelved items. The plaintiff proved that this oil would have been difficult to see and that Ross would have had to look closely for it because it was shiny and the floor was extremely shiny. Ross did not know when the cooking oil aisle had last been inspected prior to his checking the cake mix price.
Ross testified that no specific person was in charge of inspecting the aisle containing the cooking oil, and that there was no set written inspection procedure. According to Ross, the store managers had a practice of inspecting the entire store every fifteen minutes, and if the store manager was detained, "every so often" the inspections would occur every 30 minutes.
That Ross was inspecting the floor of the entire store every fifteen minutes is called into question by his very activities preceding and after this accident. After Ross checked the price of cake mix, he helped another customer find something in the back of the store. Pellegrin testified that five to ten minutes before plaintiff fell, Ross was talking to her in front of the seafood display.
Pellegrin testified that all managers had a practice of walking the store floor, but she could not remember specifically Ross' practice of walking the store floor to inspect nor could she remember how often it would occur. Quave testified that inspections by management personnel had to be every thirty minutes as directed by upper management, *654 although there were no written instructions to that effect. Later, when reminded of earlier deposition testimony, Quave testified the inspections were at fifteen minute intervals, and that the correct interval was fifteen minutes.
Furthermore, the jury could have found that the particular aisle in question had not been properly inspected at the time of the accident. Winn Dixie had no policy as to how inspection was to be conducted. The failure of Winn Dixie to have in place a uniform, mandatory, non-discretionary, clean-up and safety procedure reveals a lack of reasonable care. See Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir.1993). The jury could have found that Winn Dixie had constructive notice because the oil would have been discovered had Ross properly inspected the aisle or had the store had proper safety procedures.
The majority would require the plaintiff to prove with positive testimony that the oil was on the floor when Ross was on the aisle. Under the specific facts of this case as outlined above, the jury was not clearly wrong in inferring from Ross' testimony that the oil was on the floor at the time he was on the aisle, and would have been discovered had he performed a proper inspection.
We have thoroughly reviewed the cases decided under La.R.S. 9:2800.6 referred to in the majority opinion and conclude they do not mandate that we reverse the trial court in the case at bar. The court in Parker v. Winn-Dixie Louisiana, 615 So.2d 378 (La. App. 5 Cir.1993) did not indicate that positive testimony of a failure to inspect is the only manner for a plaintiff to meet the burden of proof under La.R.S. 9:2800.6. Furthermore, in Parker, the court inferred that the store had constructive notice of the spill from the testimony of the plaintiff that a person was in the manager's booth at the time of the accident as well as the testimony of a store employee that the manager was responsible for safety checks, that the employee was in the process of inspecting the aisle, and that the aisle on which the accident happened had not been inspected five to ten minutes before the accident. In Cobb v. Wal-Mart Stores, Inc., 624 So.2d 5 (La.App. 5 Cir.1993), the court inferred from the location of the spill on the floor that either the store's employees failed to notice the substance on the floor but should have, or that they noticed it, but did nothing about it; additionally, it is not clear from the opinion whether these conclusions were derived from testimony of the store's employees that they checked the floor but saw nothing, as is the testimony in the case before us. As in the Parker case and the case at bar, there was also no positive testimony concerning the length of time the substance was on the floor. In Oalmann v. K-Mart Corporation, 630 So.2d 911 (La.App. 4 Cir.1993), the court specifically stated that the evidence did not clearly establish precisely how long the floor near the entrance was wet with rainwater before the plaintiff's fall. The court inferred from the volume of business conducted at the defendant store and the constant influx of customers that it was foreseeable that the floor near an entrance would become wet, and thus, slippery, in a relatively short period of time, such that the accumulation of rainwater at the entrance existed for such a time that the defendant should have discovered the danger. The court concluded, based on "the totality of the circumstances", the defendant had constructive notice of the wet floor. In Saucier v. Kugler, Inc., 628 So.2d 1309 (La.App. 3d Cir.1993), no evidence was presented regarding the length of time the lemon the plaintiff tripped on was a hazard. We do not find Treadaway v. Shoney's, Inc., 93-1688 (La. App. 4 Cir. 2/25/94), 633 So.2d 841, to be helpful because in that case, the employee created the hazard which caused the plaintiff to fall.
That the appellate courts affirmed findings of liability under La.R.S. 9:2800.6 in these cases does not dictate a finding that in the case before us the proof is insufficient to support a finding of liability because it is not the same type of proof. To the contrary, I find that these cases support the trial court's finding that the defendant had actual or constructive notice of the hazardous condition.
La.R.S. 9:2800.6 does not state that a plaintiff must prove constructive notice with positive testimony. The jury's finding of constructive notice in this case was not manifestly *655 erroneous or clearly wrong, and I do not believe it should be set aside.
For these reasons, I respectfully dissent.
NOTES
[1] Plaintiff also named a fictitious defendant, XYZ Insurance Company. No actual defendant was ever substituted for XYZ.
[2] Plaintiff's husband, James M. Welch, also joined in the original petition, but he voluntarily dismissed his loss of consortium claim before trial.
[3] Since plaintiff did not appeal or answer the appeal, the judgment dismissing her daughters' claims for loss of consortium is final.
[4] Plaintiff does not contend defendant created the hazardous condition.
[5] We are aware of the case of Perez v. Wal-Mart Stores, 608 So.2d 1006 (La.1992). However, in that case plaintiff's cause of action appears to have arisen in 1988, and the amendment to Revised Statute 9:2800.6 is expressly prospective only.
[6] This evidence seems to us sufficient to prove plaintiff's case. However, the Third Circuit went further and stated: "The failure of Super Value to have in place a uniform, mandatory, non-discretionary, clean-up and safety procedure reveals a lack of reasonable care on its part." Saucier v. Kugler, Inc., 628 So.2d 1309, 1313 (La.App. 3d Cir.1993). We find no requirement in the current version of LSA-R.S. 9:2800.6 that a merchant prove it has such a procedure.